J-S01013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHARD MAX CRAWFORD | : | |
| | : | |
| Appellant | : | No. 793 WDA 2022 |

Appeal From the PCRA Order Entered June 3, 2022
In the Court of Common Pleas of Bedford County Criminal Division at
No(s):  CP-05-CR-0000109-2005

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED: MAY 15, 2023**

Appellant, Richard Max Crawford, appeals from the post-conviction court's June 3, 2022 order denying his second, untimely petition for collateral relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

We previously set forth the factual history of this case as follows in our memorandum decision affirming Appellant's judgment of sentence:

> The charges in this case stem from incidents involving Crawford and J.M., the minor daughter of his former girlfriend, which occurred over the course of many years. During the 1990's, Crawford lived with J.M., her mother ("Mother") and her younger sister. When Mother was at work, Crawford would watch J.M. and her sister. Crawford began living with J.M. and her family in 1990. In 1992, Crawford began sexually molesting J.M., who was then seven years old. The molestation continued until 1996, when J.M. was 12 years old. It ceased when Crawford and Mother ended their long and tumultuous relationship[,] and Crawford moved out

---

[*] Retired Senior Judge assigned to the Superior Court.

of their home permanently. J.M. did not tell anyone about what Crawford did to her until 2004, when she was 19 years old. J.M. confided in a boyfriend, who in turn informed Mother. At her family's urging, J.M. reported the incidents to the Pennsylvania State Police. In order to substantiate her claims, the police suggested that J.M. wear a recording device and speak with Crawford about these incidents, and J.M. agreed. In late 2004, J.M. met with Crawford[,] and their conversation was intercepted and recorded by the police. Based on the content of that conversation, State Trooper Joseph Kovel ("Kovel") contacted Crawford and asked him to come to the police barracks. Crawford agreed. At the barracks, Kovel informed Crawford of the allegations being made by J.M., at which point Crawford confessed that he had engaged in sexual contact with J.M. over the course of many years. Crawford described these incidents in a written statement, admitting that these incidents occurred as frequently as twice a month, or 24 times a year. After providing a written statement, Crawford left the barracks and returned home.

*Commonwealth v. Crawford*, No. 1547 WDA 2007, unpublished memorandum at *1-3 (Pa. Super. filed June 23, 2009). Appellant was sentenced to a term of 25 to 50 years' incarceration and was determined to be a sexually violent predator ("SVP"). Appellant sought review with our Supreme Court, which denied his petition on December 9, 2009. Appellant subsequently sought relief under the PCRA, with the PCRA court denying relief following an evidentiary hearing. We affirmed. *Commonwealth v. Crawford*, 1446 WDA 2011, unpublished memorandum (Pa. Super. filed July 10, 2012).

This appeal concerns Appellant's second, counseled petition seeking collateral relief, which was originally filed on April 17, 2018. Appellant thereafter filed a *pro se* PCRA petition and a motion to proceed *pro se*. The

PCRA court granted Appellant's request to represent himself after a *Grazier*[1] hearing, and counsel withdrew. Appellant was ordered to file an amended petition, which was filed on September 16, 2021.[2] The PCRA petition raised "issues regarding the legality of his sentences, violation of the rule[s] of criminal procedure, prejudicial remarks made by the prosecutor, ineffectiveness of counsel, [and] defective jury instructions." PCRA Court Opinion ("PCO"), 6/3/22, at 3-4.

The PCRA court determined that the petition was untimely with respect to all claims except allegations concerning Appellant's sexual offender obligations pursuant to Subchapter I of the Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.51-9799.75. The PCRA court entered an order denying relief, concluding that Appellant failed to plead any of the statutory exceptions to the time-bar and that his arguments regarding his SORNA obligations were meritless. Appellant filed a timely notice of appeal[3] and complied with the PCRA court's order to file a Pa.R.A.P. 1925(b)

_____

[1] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

[2] The PCRA court's opinion notes that it granted Appellant's several requests to extend deadlines to file the amended petition.

[3] Appellant's notice of appeal was in violation of the appellate rules, as it was not filed until July 8, 2022, thirty-five days after the order was entered. *See* Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken."). This Court issued a rule to show cause why the appeal should not be quashed, and Appellant's response included two cash slips dated for June 22, 2022, and July
*(Footnote Continued Next Page)*

statement. The PCRA court filed its responsive opinion, and the matter is

ready for review of Appellant's claims:

> 1. Did the [Commonwealth] lack jurisdiction to prosecute and sentence on changed or 'repealed' statute/elements before a conviction occurred in this case?
>
> 2. Did the PCRA court err in failing to give relief from the unconstitutional mandatory sentence statute 9718(a) imposed in this case?
>
> 3. Did the court incorrectly impose Megan's Law and/or [SVP] regulations on offenses in this case allegedly committed before April 22, 1996?
>
> 4. Is the [Commonwealth] incorrectly imposing SORNA [Subchapter I] and/or [SVP] regulations on offenses in this case allegedly committed before April 22, 1996?
>
> 5. Did the [Commonwealth] fail to prove the applicable (5) year statute of limitations period to prosecute this case beyond a reasonable doubt?
>
> 6. Did the [trial court] err in failing to give a statute of limitations instruction for the jury to determine in this case?
>
> 7. Did the [trial court] lack valid jurisdiction from the beginning of this case due to defective charging documents?
>
> 8. Is the conviction flawed because the wiretap transcripts went with the jury during their deliberations?
>
> 9. Is the conviction flawed because the prosecutor gave his personal opinion to the jury about the delay of complaint and credibility of his witness?

---

3, 2022, both of which were sent to the Bedford County Clerk of Courts with the words "Notice of Appeal" at the top. We will therefore consider the appeal timely. **See** Pa.R.A.P. 121(f) ("A *pro se* filing submitted by a person incarcerated in a correctional facility is deemed filed as of the date of the prison postmark or the date the filing was delivered to the prison authorities for purposes of mailing as documented by a properly executed prisoner cash slip or other reasonably verifiable evidence.").

10. Is the conviction flawed because the prosecutor gave his personal opinion to the jury about the accused defendant's testimony?

11. Is the conviction flawed because the wiretap was illegal in this case?

12. Is the conviction flawed due to an unfair trial or ineffective counsel?

Appellant's Brief at 5-6 (reordered for ease of disposition).

Our standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Ragan*, 923 A.2d 1169, 1170 (Pa. 2007).

All PCRA petitions, including second or subsequent petitions, "shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves" one of three statutory exceptions. *See* 42 Pa.C.S. § 9545(b)(1)(i-iii). "The General Assembly's determination that a PCRA petition must be filed within one year of when a petitioner's judgment of sentence becomes final is statutorily described as a jurisdictional limitation." *Scott v. Pennsylvania Bd. of Prob. & Parole*, 284 A.3d 178, 187 (Pa. 2022). Our Supreme Court has held that this jurisdictional requirement implicates subject-matter jurisdiction, *id.*, and the timeliness of a petition is "a threshold question implicating our subject matter jurisdiction and ability to grant the requested relief." *Commonwealth v. Whitney*, 817 A.2d 473, 478 (Pa. 2003), *overruled on other grounds by Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020). Accordingly, the question is whether the

petition is timely and, if not, whether Appellant has pled and proven an exception.

Appellant's petition is patently untimely, as his judgment of sentence became final on March 9, 2010, ninety days after our Supreme Court denied his petition for review. 42 Pa.C.S. § 9545(b)(3) (stating that a judgment of sentence becomes final "at the conclusion of direct review … or at the expiration of time for seeking the review"); U.S. Sup. Ct. Rule 13 (stating that a petition for a writ of *certiorari* in the United States Supreme Court must be filed within 90 days after the entry of judgment of a state court of last resort). Therefore, Appellant's time for seeking PCRA review expired on March 9, 2011, and the petition must satisfy one of the following three statutory exceptions:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i-iii).

Appellant offers various arguments as to why his petition is timely. Initially, we note that Appellant seems to aver that if his PCRA petition were timely as to any claim, then the PCRA court has jurisdiction over all claims that could have been raised in an initial PCRA petition. However, the cited

exception must pertain to the claim that the petitioner seeks to raise. **Cf. Commonwealth v. Gamboa-Taylor**, 753 A.2d 780, 783–84 (Pa. 2000) (stating that the PCRA court has jurisdiction over an untimely petition only if one of the exceptions applies "and second, that, in accordance with 42 Pa.C.S. § 9545(b)(2), he filed his petition within 60 days of the date that his claims could have been presented").[4] For example, a petitioner who was sentenced as a juvenile offender to life imprisonment without the possibility of parole and was thus entitled to application of the Section 9545(b)(1)(iii) exception as a result of **Montgomery v. Louisiana**, 577 U.S. 190 (2016) (holding that states must give retroactive effect to **Miller v. Alabama**, 576 U.S. 460 (2012)), could not raise garden-variety ineffectiveness claims as those claims would have no connection to the exception.

Thus, we initially dispose of Appellant's reordered fifth through twelfth issues on the basis that he offers no arguments as to why these errors would satisfy any of the statutory exceptions. Appellant seeks to bootstrap these claims to others for which he offers some argument as to a statutory exception. We now address the claims for which Appellant offers an argument regarding timeliness, which we have reordered as the first, second, third, and fourth issues.

Appellant's first issue involves his convictions for involuntary deviate sexual intercourse ("IDSI"), which the Commonwealth apparently charged

---

[4] The statute now states that a petitioner has one year to file the petition. 42 Pa.C.S. § 9545(b)(2).

under 18 Pa.C.S. § 3123(a)(6).[5]  At the time Appellant committed the offenses, that subsection criminalized "engag[ing] in deviate sexual intercourse with a complainant … who is less than 13 years of age[.]"  That language was inserted by P.L. 985, No. 10, effective May 30, 1995, and "shall apply to offenses committed on or after the effective date of this act."  However, that subsection no longer existed at the time Appellant was charged, as subsection (6) was deleted by a 2002 amendment and was recodified as the separate offense of "involuntary deviate sexual intercourse with a child," which is where things stand today.  18 Pa.C.S. § 3123(b).  Appellant was apparently charged with violating subsection (6), which no longer exists.  Appellant thus posits that the Commonwealth charged him with a crime that does not exist, and argues that this implicates subject-matter jurisdiction, which is never waivable.  **See** Appellant's Brief at 13 (claiming that "this is a question of statutory jurisdiction of the old statutes and 'elements' of the crimes charged in this case").

Changes in the law may invalidate a former statute and thereby render a proceeding void *ab initio*.  A specific application of this principle is set forth in **Commonwealth v. McIntyre**, 232 A.3d 609 (Pa. 2020), which involved a

---

[5] The criminal docket states that Appellant was convicted of "IDSI person less than 13 years age".  The PCRA court's opinion states that Appellant "was found guilty of 97 counts of [IDSI], less than 16 years of age" without a citation to a particular statutory subsection.  PCO at 1.  At sentencing, the trial court determined that all these convictions merged with other offenses.  Due to our resolution of this claim, we need not examine the certified record to determine if the public docket is erroneous.

conviction under 18 Pa.C.S. § 4915 for failing to comply with sexual offender registration obligations. The **McIntyre** decision addressed the application of **Commonwealth v. Neiman**, 84 A.3d 603 (Pa. 2013), which had held that the entirety of Act 152, which included Megan's Law III and Section 4915, was invalid as the General Assembly violated the single subject rule. In turn, our Supreme Court's decision in **Commonwealth v. Derhammer**, 173 A.3d 723 (Pa. 2017), held that the Commonwealth lacked authority to prosecute violations of Section 4915 due to the **Neiman** holding and the General Assembly's failure to remedy the problem. **See id.** at 731 (Wecht, J., concurring) ("Whether by accident, or because it believed erroneously that its promulgation of SORNA covered individuals such as Derhammer, the General Assembly failed to re-enact section 4915, thus creating the gap in criminalization that compels today's decision.") (footnote omitted). The net effect was that it is as if Section 4915 never existed. The appellant in **McIntyre** received relief after raising the issue for the first time on appeal from the denial of a timely PCRA petition, with our Supreme Court agreeing that the issue pertained to the legality of McIntyre's sentence and, thus, was not subject to issue preservation requirements.

To the extent Appellant is raising an argument along the lines that the statutory amendment in 2002 rendered his convictions void *ab initio* by deleting the Section 3123(a)(6) crime, Appellant cannot overcome the time-bar, as the PCRA does not include a freestanding exception to raise issues pertaining to legality of sentence or subject-matter jurisdiction. **Compare**

*Montgomery*, 577 U.S. at 196 (quoting Louisiana statute providing "that [a]n illegal sentence may be corrected at any time by the court that imposed the sentence") (bracketing in original). Indeed, we have determined in an unpublished memorandum that *McIntyre* does not apply to untimely PCRA petitions:

> In sum, *McIntyre* makes it clear that [the a]ppellant is serving an illegal sentence, and is being imprisoned for violating a statute that is deemed to have never existed. However, our Supreme Court has made it equally clear that there are no equitable exceptions to the PCRA's time bar, and that unless a defendant is able to satisfy one of the three PCRA's enumerated timeliness exceptions, our courts lack jurisdiction to grant … relief on his PCRA-cognizable claim.

*Commonwealth v. Wadsworth*, 525 WDA 2020, unpublished memorandum at *9-10 (Pa. Super. filed Feb. 8, 2021), *appeal denied*, 262 A.3d 1257 (Pa. 2021), *reconsideration denied* (Oct. 15, 2021).

Thus, even if Appellant is correct that the Commonwealth mistakenly charged the wrong subsection or a former version of the crime, Appellant failed to meet an exception to the PCRA's time-bar. The statutory amendments on which he relies all occurred prior to his trial. As there is nothing "new" to cite with respect to the PCRA's statutory exceptions, Appellant has failed to plead and prove that any exception applies.

We now address Appellant's second claim of error, which alleges that several of his mandatory minimum sentences are illegal based on later caselaw. *See Commonwealth v. Wolfe*, 140 A.3d 651 (Pa. 2016) (holding that 42 Pa.C.S. § 9718, under which Appellant apparently received a

mandatory minimum sentence, is unconstitutional). This argument fails, as **Wolfe** is simply an application of **United States v. Alleyne**, 570 U.S. 99 (2013). The **Alleyne** decision does not satisfy the Section 9545(b)(1)(iii) exception. **Commonwealth v. Washington**, 142 A.3d 810, 811 (Pa. 2016). Thus, the PCRA court correctly determined that this claim was not subject to any timeliness exception.

The remaining two claims are essentially identical, as both involve the validity of Appellant's SORNA obligations. We therefore address them together. The history of the sexual offender laws in Pennsylvania is quite tortuous, owing to the several iterations of these laws, as well as legislative responses to cases like **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017) (holding that SORNA was punitive and thus could not be applied retroactively). Presently, Appellant is required to register under Subchapter I of SORNA, which applies to individuals who were:

> (1) convicted of a sexually violent offense committed on or after April 22, 1996, but before December 20, 2012, whose period of registration with the Pennsylvania State Police, as described in section 9799.55 (relating to registration), has not expired; or
>
> (2) required to register with the Pennsylvania State Police under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired.

42 Pa.C.S. § 9799.52.

Briefly, as to proceeding on the merits regarding these claims, challenges to sexual offender registration requirements need not comply with the PCRA's statutory time-bar. *See Commonwealth v. Lacombe*, 234 A.3d

- 11 -

602 (Pa. 2020) ("[W]e decline to find the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes…."); ***Commonwealth v. Smith***, 240 A.3d 654, 658 (Pa. Super. 2020) (explaining that "the strict jurisdictional requirements of the PCRA render it unsuitable, because many registrants will be ineligible for relief on timeliness grounds or because their criminal sentence has expired while their registration requirements continue").  Thus, challenges to sexual offender registration laws may be raised outside the PCRA.  ***Commonwealth v. Elliott***, 249 A.3d 1190, 1193 (Pa. Super. 2021).

Appellant argues at length that he cannot be required to register for two reasons: (1) that all the offenses for which he was convicted occurred before April 22, 1996, and (2) that applying SORNA violates *ex post facto* protections. Appellant's argument that his last offense occurred before April 22, 1996, is belied by the record.  The Commonwealth charged Appellant with 502 crimes and filed a bill of particulars alleging that the crimes occurred from 1992 through March of 1997.  While Appellant was acquitted of hundreds of the charges, he was convicted of some crimes occurring in 1996.  For instance, count numbers 482 through 493 "occurred between March 1996 and September 1996."  Bill of Particulars, 8/9/06, at 20.  Appellant was convicted of counts 482 and 483.  While it appears that Appellant was acquitted of all crimes alleged to have occurred in 1997, the record establishes that he was found guilty of offenses occurring in 1996.

Even extending to Appellant the benefit of the doubt that the jury convicted him only of offenses occurring before April 22, 1996, Appellant's claim still fails as he was convicted of rape, which has always been a registrable offense. *See Van Doren v. Mazurkiewicz,* 695 A.2d 967, 969 (Pa. Cmwlth. 1997) (quoting original Megan's Law, which required registration for offenders convicted of, *inter alia*, rape). Subchapter I of SORNA includes, in its scope, offenders who were required to register under former laws. 42 Pa.C.S. § 9799.52(2) ("This subchapter shall apply to individuals who were … required to register … under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012, whose period of registration has not yet expired."). Appellant has been continuously incarcerated and thus this would supply a separate basis for registration.[6]

Relatedly, Appellant's *ex post facto* claim also fails. *Muniz*, *supra*, held that the set of registration obligations imposed under that iteration of SORNA were punitive measures and thus could not be applied retroactively. Appellant, however, is required to register under Subchapter I of SORNA. In

---

[6] While we are not bound by unpublished memorandum decisions, we observe that in *Commonwealth v. Krout*, 1574 MDA 2021, 2022 WL 4100974 (Pa. Super. filed Sept. 8, 2022) (unpublished memorandum), the appellant was convicted of crimes occurring before 1996 and was incarcerated until 2017. We rejected his argument that he was not required to register pursuant to SORNA Subchapter I, concluding that he had to register upon release from his incarceration due to this statutory subsection, and that his obligation to register arose upon his conviction. *Id.* at *4-5 (following *C.M. v. Pennsylvania State Police*, 269 A.3d 1280 (Pa. Cmwlth. 2022) (*en banc*)).

*Lacombe*, our Supreme Court held that Subchapter I is nonpunitive. Thus, those obligations may be imposed retroactively, thereby disposing of Appellant's *ex post facto* claim.[7] *Lacombe*, 234 A.3d at 626-27 ("We hold Subchapter I does not constitute criminal punishment, and the *ex post facto* claims forwarded by appellees necessarily fail."). Accordingly, Appellant's remaining claim, while reviewable on the merits, fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/2023

---

[7] Appellant attempts to distinguish *Lacombe* on the basis that Lacombe "committed his crime in 1997 and was not deemed an [SVP]." Appellant's Brief at 37. As explained, Appellant's assertion that he was convicted only of crimes occurring before April 22, 1996, is mistaken.

We add that Appellant was deemed an SVP following his convictions. As our Supreme Court held in *Commonwealth v. Butler*, 226 A.3d 972 (Pa. 2020), an SVP finding is nonpunitive, and the designation exists to protect "the public … not from those who have been convicted of certain enumerated crimes, but instead from those who have been found to be dangerously mentally ill." *Id.* at 992-93. Appellant's SVP status arguably serves as a separate basis to impose SORNA obligations, as Subchapter I requires all SVPs to register for life. 42 Pa.C.S. § 9799.55(b)(3) ("The following individuals shall be subject to lifetime registration … [s]exually violent predators.").